T. W. & C. B. SHERIDAN CO. v. W. F. HALL PRINTING CO. et al.

No. 6786.

Circuit Court of Appeals, Seventh Circuit.

June 13, 1939.

James P. Hume and Milton T. Miller, both of Chicago, Ill. (Donald Campbell and Arnold S. Worfolk, both of New York City, of counsel), for appellant.

Russell Wiles, Marcus A. Hirschl, George A. Chritton, and Jules L. Brady, all of Chicago, Ill. (Chritton, Wiles, Davies, Hirschl & Dawson, of Chicago, Ill., of counsel), for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

The alleged infringement of the Seiter patent, No. 1,791,081, issued February 3, 1931, for a "Bookmaking Machine" is the subject of the controversy which occasioned this litigation. The court found the patent invalid and a decree for the defendants followed. The court also found infringement, if the patent be valid.

The findings somewhat argumentatively support each and every position taken by the defendants on the issue of validity. In the margin we set forth the more material ones.[1]

[1] Findings of Fact and Conclusions of Law.

"1. The incorporation and residence of the parties are as charged in the Bill of Complaint.

"2. The Plaintiff * * * is the owner of Seiter Patent 1,791,081 * * * upon an application filed December 9, 1926.

"3. The defendant * * * has used the accused machine in * * * (Chicago); * * * the other defendants have taken part in the alleged infringement by making and selling parts of said machine * * *.

"4. The accused machine is an automatic machine for assembling, stitching, and covering books, * * *. It includes three of principal elements, gathering mechanism, stitching mechanism, and covering mechanism, a conveyor chain advancing the materials worked on through the elements in the order named. The gathering mechanism has a plurality of reciprocating extractors for delivering signatures to a continously moving conveyor to form piled groups, the gatherer being adapted to operate either one up or two up. The stitching mechanism comprises two independent reciprocating side stitchers, each being a duplicate of the other. The stitcher mechanism may be arranged one up, in which case whichever stitcher is being used operates on each book; or it may be arranged two up, in which case both stitchers are used and their travel and operating speed is so timed with relation to the conveyor that each operates on only every other book. The covering mechanism comprises means adapted to glue a cover on the book during its movement with the conveyor.

"5. The accused machine * * * in all respects except in the duplication of stitchers, was old in the art, * * *

"6. The accused devise is charged to infringe claims 1, 3, 4 and 12 of the Seiter patent 1,791,081 in suit.

"7. The combination of a gatherer, adapted to operate either one or two up, a reciprocating side stitcher, and a coverer was old in the art and in use more than two years prior to the filing of the * * Seiter (application) * * *.

"8. It was old to use a plurality of stitchers to share the work of stitching material supplied to the stitching mechanism at a high rate of speed, the arrangement being such that each stitcher operated on only a fraction of the total material.

"9. It was old in the art, * * * to stitch two or three or more books at once, so that the rate of output of books was several times the rate of operation of the stitching mechanism. * * *

"10. It was old in the stitching art, * * * to stitch sheets of paper together on the run in such a way that

The patent covers a machine usable in large scale manufacture of pamphlets and magazines. The alleged improvement deals with the mechanism for side stitching pamphlets as contrasted with thread stitching or with saddle stitching.

Plaintiff manufactures a well-established line of book making machines in which field it has long been successful in meeting the demands of the trade. In doing so, it has developed numerous improvements in machinery which have been accepted by the trade, some of which have been covered by patents. In 1926, the Seiter invention, which is the subject-matter of this suit, was developed in its plant.

One of the defendants, the Hall Printing Company, does a large business in its field and buys and installs machinery used in printing and pamphlet making. It purchased and has since used the apparatus which is an alleged infringement of the Seiter patent. This machine was designed and sold by Martin Machinery Company, another defendant. Still a third defendant, the Whiting Corporation, built and assisted the other defendants in starting the machine in operation.

Infringement is admitted if the Seiter patent be valid. It is at least inferable that the defendants got their ideas for the infringing machine from disclosures of the Seiter patent.

The issue of validity is narrowed to a small compass and is unvexed by factual disputes or complicated machinery design or description. Stated rather extremely, we must determine whether a machine with two sets of stitching mechanisms arranged in tandem to operate on alternate units on a conveyor is, in view of the prior art, entitled to patent protection, conceding plaintiff was first to design and construct such a machine. The said prior art showed the same kind of a machine with a single stitching set of the same kind.

The machinery used is what is known as a pamphlet side stitching operation machine which for many years has been well established as to type. It has mechanisms for three operations. In this type of machinery there are three parts: (a) a gatherer, (b) a stitcher, and (c) a coverer. *Seiter made his improvement in the stitcher.*

each particular set of stitching heads operated on only every other point to be stitched, or even more infrequently.

"11. It was old in general * * * in automatic machinery of the character adapted to perform an operation upon continuously moving units, where it was desired to deliver the units at a faster rate than such operation could be performed, to have a plurality of operating devices arranged to operate on the continuously moving units in such a way that each operating device operated, on only every other, every third, or even every twelfth unit. This was common practice in performing such operations as bottle blowing, bottle capping, container filling, can soldering, and the like.

"12. The prior art, * * Kast Patent No. 1,644,192, taught varying the conveyor speed with respect to the speed of operation of the stitching mechanism to regulate the number of stitches placed in each book.

"13. * * *

"14. * * *

"15. The patent and claims in suit, if valid, have been infringed by the defendants' accused apparatus.

"16. Claims 1, 3, 4, and 12 of the Seiter patent No. 1,791,081 in suit are directed to no more than a mere duplication, involve no invention, and are invalid."

Claims 1 and 12 of the patent read:

"1. A book making apparatus comprising conveying means having connections for actuating it for advancing a succession of signature groups at the travel rate of a given plural number of book spaces or sections in each cycle period, and uniting mechanism having a plurality of uniting sets and means for operating them to unite such plural number of successive groups in each cycle period."

"12. In a book making apparatus of the kind having gathering means followed by uniting means for the signature groups, and with means for conveying the groups in procession, from one to the other; the combination of such conveying means, the same having connections for actuating it to advance the succession of signature groups at the travel rate of a multiple number of groups in each cycle period of the apparatus, to bring them successively to the uniting point, while maintaining them in grouped condition, and uniting mechanism having a plurality of stitching sets, with means for operating them to unite a multiple number of signature groups in each cycle period, and means for reciprocating the stitching sets bodily along the travel line at a speed corresponding with the conveyor speed and in a period corresponding with the cycle period."

The art as it existed may be described, though not entirely accurately, as a single stitcher. Seiter's invention is what we will call a double stitcher.

It appears that machinery of the class here under consideration had long been in use. It is automatic in operation, very lengthy in structure, and somewhat costly to build. It binds thousands of pamphlets per hour.

According to appellant, the weak spot in the machine as it theretofore existed was in the stitcher and that was due to its inability to handle signatures[2] as fast as the conveyor brought them from the gathering unit.

Briefly stated, the operation of the combined machine was as follows: Signatures were piled at predetermined distances and pushed on the conveyor which moved toward the stitcher; at the predetermined place, the gathered signatures were pushed to the stitcher where the operation of side-stitching was performed. The conveyor then carried the signatures on to the third operation, to a coverer which glued on and shaped pamphlet covers. A long table operated by a conveyor belt or chain was used, and there was a constant automatically-regulated flow of signatures.

In actual operation the speed of the machine seemed to be limited by the stitching operation. Seiter sought to overcome this by making a machine with a stitcher that had more than one mechanism for the stitching. It is not, of course, in the result that patentability is to be found, but in a machine of original and inventive design which accomplishes a utilitarian result that invention must be lodged. The asserted invention of Seiter was directed to machinery which was usable in the "double or duplicate operation of the stitcher."

The heart of the invention is to be found in the following words of the twelfth claim: "and means for reciprocating the stitching sets bodily along the travel line at a speed corresponding with the conveyor speed and in a period corresponding with the cycle period."

It would be no defense to a patent that results were duplicated, nor must we necessarily dismiss a claim either because results were merely duplication or means for securing such results are duplication of existing mechanisms. The former, the duplication of results, affords no test of validity or invalidity whatsoever. The latter may or may not be pertinent, depending on all the surrounding circumstances. For it must be obvious that in an involved machine, automatic in character and rapid in operation, the desirability of certain results may be well seen and appreciated and yet the changes necessary to secure them, baffle ingenious craftsmen and others who boast of inventive gifts and resources. It is the machine that we must look to and the changes which the plaintiff wrought therein to ascertain whether they constituted improvements entitled to patent protection.

For the purpose of our conclusion we assume that in a stitching machine of this kind doubling the number of stitching mechanisms and arranging for the automatic operation of one following the other, which was certain to increase the progress of the article subjected to the stitching operation through the stitcher, was first put into a pamphlet stitching machine by Seiter.

We must also assume that the general make-up and mechanism of a machine used in the operation of this kind of stitching machine were well established and had been for many years prior to Seiter's application for the patent in suit.

We must also assume that in many industries which utilize manufacturing machinery, where units were carried on a continuously moving conveyor, one of the operating units might slow the operation of all the others. This is illustrated in the can soldering art and bottle capping operation.

In almost all cases the method adopted for improving the speed of one unit which was holding back the output of the entire machine, has been to duplicate said unit or operating mechanism.

Under all the circumstances, and in view of the operation and mechanism of the stitching machine in common and wide use prior to 1926 when Seiter filed his application, we are of the opinion that duplication of stitching mechanisms operating in tandem arrangement in this particular field was not invention. If the entire machine, save for the duplicate stitch-

---

[2] A signature is a trade name for a unit of paper which is about to be stitched.

er, were not so clearly shown and commonly used and if the heart of the improvement were not limited to a duplication of the stitching mechanism, we would have more hesitancy about the soundness of our conclusion. But the change that took place did not involve the other mechanisms—the gatherer and the coverer. The principle of the improvement so far as the stitcher was concerned was to duplicate the mechanism of one stitcher and make it operate alternately with the one already on the machine. Doubtless, the increase in number of stitchers necessitated some readjustment in the automatic working of the other parts, but that at most involved merely mechanical skill to effect the necessary adjustment.

We have given consideration to plaintiff's various arguments including alleged extensive public use, and conclude that the decree should be, and it is, hereby

Affirmed.